## G. W. LEIHY
## v.
## F. A. BRIGGS.

*Sales—Articles Intended for the Use of One of Several Partners—Purchase in Firm Name—Promise by One of Several Partners to Assume Firm Debt—Acceptance by Creditor of Offer—Evidence.*

1.  Articles intended for the use of one of several partners may be purchased in the firm's name, if so purchased with the consent of all the partners, and when such articles are purchased and are charged to the partnership account, the debt will not be changed from a joint debt of all the partners to a several debt of the one who used the chattels, by the refus.1 of the other partners to treat the debt as a firm debt.

2.  If one of several partners promises a creditor of the firm of which he is a member to assume and pay his entire debt, and the creditor agrees to look to him alone, a substitution of debtor is affected and the other partner is released.

3.  In an action to recover the price of a phaeton and other property sold to a certain firm, it being contended by the plaintiff that because they were

. purchased for the defendant's wife, the price thereof could not become a firm debt, this court holds, that in view of the agreement entered into by the members thereof, to settle differences existing between them, that the other partner should assume all indebtedness of the partnership, and of the fact that he was accepted as debtor by the plaintiff, operated to release the defendant from all liability upon such claim.

[Opinion filed October 23, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs MONROE & McSHANE, for appellant.

The agreement on the part of Leihy to turn over the property to Acker, and Acker's agreement to pay the debts of the firm, including this, was certainly a good consideration moving from Leihy to Acker; and when Mr. Briggs, who was present, aiding in the consummation of that agreement, said to Mr. Leihy, "If you will do that, I will take Acker and release you," and Leihy accepted, that was a good and valid consideration for Briggs' agreement. When Leihy executed his part, his liability to Briggs either individually or as a member of the firm was ended. Mr. Leihy was never individually liable to Mr. Briggs. When his liability as a partner ceased his individual liability ceased. So there was no need of any special plea denying individual liability or setting up that the debt was due from Acker & Leihy.

Messrs. C. H. WILLETT and C. PORTER JOHNSON, for appellee.

The principle of law which we ask the court to modify is stated in the opinion in these words: "The rule is that if one partner promises the creditor to assume and pay the entire debt, and the creditor promises to look to him alone, a substitution of debtors is effected, and the other partner is released. This is founded on the doctrine that the sole liability of one of two debtors may, under many circumstances, be more beneficial and convenient than the joint liability of two, and therefore the change is founded upon a valuable consideration;

and whether it was actually a benefit in each particular case will not be looked into, but the agreement will be sustained. Bates on Part., Sec. 505."

The courts adopts this *dicta* of the text of Bates which comes from a misconception and misquotation of the opinion of Denman, C. J., in Thompson v. Percival, 5 Barn. & Adol. 925, A. D. 1834, where, on page 932, he says:

"It appears to us that the facts proved, raised a question for the jury, whether it was agreed between the plaintiffs and *James*, that the former should accept the latter as their sole debtor, and should take the bill of exchange accepted by him alone, by way of satisfaction for the debt due from both. If it was so agreed, we think that the agreement and receipt of the bill would be a good answer on the part of Charles Percival to this demand, by way of accord and satisfaction. It is not necessary to determine whether the assent of Charles to this agreement was necessary, in order to give it such an operation, because if it was, there is evidence of a delegation by Charles to James to make such an agreement, for James had the partnership effects left in his hands, and was to pay all the partnership debts.

"It can not be doubted but that, if a chattel of any kind had been, by the agreement of the plaintiff and both the defendants, given and accepted in satisfaction of the debt, it would have been a good discharge. It is not required that the chattel should be of equal value, for the party receiving it is always taken to be the best judge of that in matters of uncertain value. Andrew v. Boughey (Dyer, 75 a). Nor can it be questioned but that the bill of exchange of third persons, given and accepted in satisfaction of the debt, would be a good discharge. But it is contended that the acceptance of a bill of exchange by one or two debtors can not be a good satisfaction, because the creditor gets nothing which he had not before. The written security, however, which was negotiable and transferable, is of itself something different from that which he had before; and many cases may be conceived in which the sole liability of one or two debtors may be more beneficial than the joint liability of two, either in

respect to the solvency of the parties or the convenience of the remedy, as in cases of bankruptcy or survivorship, or in various other ways; and whether it was actually more beneficial in each particular case can not be made the subject of inquiry.

"The cases of Lodge v. Dicas (3 B. & A. 611), and David v. Ellice (3 B. & C. 611), are said to be against this view of the law. In the former, however, no new negotiable security was given, nor does the difference between the joint liability of two, and the separate liability of one, appear to have been brought under the consideration of the court."

In this case it was left for the jury to say whether an accepted bill of the continuing partner was not an accord and satisfaction of the firm's debt.

In Lyth v. Ault, 7 Ex. 669, Alderson, J., p. 674, sustains the opinion in these words: "It is demonstrable that the sole security of A may be a better thing than the joint security of A and B; for, by accepting the sole security of A instead of the joint security of both debtors, the creditor possesses a legal remedy against A during his lifetime, and against his assets after his death, and no security whatever against B. Now, as to the case where the security is joint. After the death of A there exists a legal liability of B, and no legal liability of A's assets; but an equitable remedy against the assets of A, subject to the necessity of making B a party to a suit in equity. Now, these two securities are different things, and therefore a bargain to take the one for the other is good. Cases may be suggested of A being rich and B poor, in which the advantage of taking A as the debtor in lieu of A and B is clear ; or it may be that B is as rich as A, in which case the creditor may fairly consider that one debtor alone is preferable to both together. If, instead of B, the names of a hundred persons be substituted, these persons must all be made parties to a suit in equity. Wilkinson v. Henderson, 1 My. & K. 585; Thorpe v. Jackson, 2 Y. & C. 553, where Lord Eldon's opinion in Ex parte Kendall is quoted. Now, in a suit in equity where a hundred parties are in the suit, the

chances of its lasting many years and of its costing much
are infinite."

In Backus v. Forbes, 20 N. Y. 204, head-note reads: "It
was agreed between two partners and a creditor of the firm
that it should be submitted to arbitrators to divide and appro-
priate the assets as they deemed fit for the payment of debts,
and to determine which of the partners should pay the cred-
itor, and the other should be discharged. Held, such submission
constitutes a sufficient consideration, and that an award dis-
charging one of the partners is a bar to an action against him."

The submission was in writing, signed by the partners and
the creditor.

Comstock, J., on page 207, says: "It is quite true that the
obligation of one of two joint debtors, substituted for that of
both, affords no new security to the creditor."

In Collyer v. Moulton, 9 R. I. 90, quoting the *dicta* of
Thompson v. Percival, *supra*, it is held the facts do not war-
rant it.

In Walstrom v. Hopkins, 103 Pa. St. 118, A. D. 1883,
head-note reads: " A promise by the creditor of a firm to
release a partner who has retired from the firm, that he would
look to the continuing partner only for payment of his debt,
unless founded on a legal consideration is *nudum pactum*, and
can not be enforced."

The facts are on all fours with the case at bar; Gordon, J.,
said (page 120) : " Were we to approve of the judgment of
the court below, we must adopt the doctrine that a considera-
tion purely moral in its character, an empty promise, without
more, is sufficient to support a legal contract."

In Lodge v. Dicas, 3 Barn. & Ald. 611, A. D. 1820, head-
note reads: " Upon the dissolution of a partnership, it was
agreed between the partners that one of them should take
upon himself to discharge a debt to A; A was informed of
this, and expressly agreed to exonerate the other partner
from all responsibility. Held, that these circumstances did
not constitute any defense to the latter in an action by A
against both partners."

In David v. Ellice, 7 Dow. & Ry. 690, head-note reads:

" One of four partners having retired, the other three con-
tinued the business, assuming the funds, and charging them-
selves with partnership debts.   A, a creditor of the old firm,
was informed of this arrangement, and his account was, with
his consent, transferred from the old firm to the new, with
whom he continued to have dealings, drawing upon them and
making them payments for about twelve months, when they
failed, in his debt.   Held, that the retired partner was still
liable to A for the balance due to him by the old firm, though
if A had drawn for that balance at any time during the solv-
ency of the new firm, it would have been paid."

In Early v. Bart, 68 Ia. 716, head-note reads: "The prom-
ise of one partner to pay a debt for which he is already bound
is no consideration for an agreement to release the other
partner."

In Clark v. Billings, 59 Ind. 108, head-note reads: "In an
action on a promissory note, executed by a partnership, an
answer by one of the partners, that, with the consent of the
plaintiff, he had retired from the partnership, and transferred
his interest in the partnership goods to the remaining part-
ner, who had assumed the debts of the partnership, is
insufficient."

In Chase v. Vaughan, 30 Me. 412, head-note reads: "A
parol contract to discharge one of two joint debtors, if made
without consideration, can not be enforced."   The promise
was to take the continuing partner for a firm debt.   Thomas
v. Shilliber, 1 Ex. 124; Georgia Co. v. Castleberry, 43 Ga.
187; Eagle Manf. Co. v. Jennings, 29 Kan. 657.

MORAN, J.   Appellee brought this action against appellant
to recover for the price of a phaeton, single harness, robe and
whip, sold and delivered.

Plaintiff's evidence, which consisted of depositions of wit-
nesses, clearly showed that said articles were, on the order of
Acker & Leihy, of which firm appellant was at that time a
member, shipped from San Francisco, Cal., to appellant's wife
at Eureka.   The articles were ordered in the name of Acker
& Leihy by appellant, with the knowledge of his partner

Acker, and were charged against the firm on the books of appellee. Appellee's counsel contends that because they were purchased for appellant's wife they could not properly be charged to the firm and that the price of them did not become a firm debt.

Articles intended for the use of one of the partners, may be purchased in the firm's name, if so purchased with the consent of all the partners, and when articles are so purchased on the partnership credit and charged to the partnership account, the debt will not be changed from a joint debt of all the partners to a several debt of the one who used the chattels, by the refusal of the other partners to treat the debt as a firm debt. Appellant swears that the articles in question were charged to him on the books of Acker & Leihy, and went with other accounts into the settlement between him and his partner.

The fact that the debt sued for was a firm and not an individual debt, would not avail appellant as a defense to this suit. But the contention is, that being a firm debt it was assumed with all other firm debts and agreed to be paid by his partner Acker, in a settlement of his partnership matters, and that in consideration of his making such settlement appellee agreed to take Acker for the indebtedness due to him from the firm, and to release appellant from liability for said indebtedness.

Appellant testified upon the trial that a difference arose between himself and his partner, and that appellee, to whom the firm was indebted in a large amount, came to Portland, Oregon, where the firm was doing business, and arranged a settlement between appellant and his said partner. That the settlement was that appellant should take some lots situated in Chicago and $800 in money for his interest in the firm, and that Acker should assume and pay all the firm debts; that said settlement was negotiated by appellee, and in consideration of appellant's agreeing to such settlement, appellee agreed to take Acker for the whole firm indebtedness and release appellant. A schedule of the firm debts was made out showing those assumed by Acker, and among others on

Leihy v. Briggs.

said list was the charge for the phaeton, harness and whip, for which recovery was now sought.

Appellant's account of the settlement and agreement is supported by the testimony of his son, and is practically without contradiction. We are, therefore, compelled to find that the agreement of Acker to pay the firm debts was made, and that the agreement of appellee to take Acker for the firm debts and release appellant in consideration that appellant would agree to the settlement, was also made. This agreement, in our opinion, constitutes a good defense to the action. The rule is, that if one partner promises the creditor to assume and pay the entire debt, and the creditor promises to look to him alone, a substitution of debtor is effected, and the other partner is released. "That is founded on the doctrine that the sole liability of one of two debtors may, under many circumstances, be more beneficial and convenient than the joint liability of two, and therefore the change is founded upon a valuable consideration; and whether it was actually a benefit in each particular case will not be looked into, but the agreement will be sustained." Bates on Partnership, Sec. 505.

"If one of the debtors agrees to surrender, and does surrender to the other his interest in the property and funds which they own together, an agreement of the creditor to discharge him and look to the other is well founded on that consideration. Backus v. Forbes, 20 N. Y. 204; see, on same point, Thompson v. Percival, 5 B. & Ad. 925; Lyth v. Ault, 7 Ex. 667; Collyer v. Moulton, 9 R. I. 90; Walstrom v. Hopkins, 103 Pa. St. 118.

The finding and judgment of the Superior Court must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*